the tonnage of coal recoverable from its mining properties was 5,000,000 tons. We are not convinced from the evidence that on the date the lease was acquired by the taxpayer there were only 500,000 tons of coal which could be profitably mined.

For lack of proof of the life of the mine and of the elements necessary for the allowance of obsolescence of the mine equipment, and in view of the provisions of the lease, the determination of the Commissioner must be approved. *Appeal of Wigwam Amusement Co.*, 1 B. T. A. 335; *Appeal of Eimer & Amend*, 2 B. T. A. 603.

---

## Appeal of MOBERLY OIL CO.

Docket No. 3552.   Submitted October 21, 1925.   Decided November 25, 1925.

*Raymond H. Schultz, Esq.*, and *C. J. Anderson, C. P. A.*, for the taxpayer.

*Robert A. Littleton, Esq.*, for the Commissioner.

Before STERNHAGEN, LANSDON, and ARUNDELL.

This appeal is from the determination of a deficiency in income and profits taxes for the years 1918, 1919, and 1920, in the amount of $4,885.50. Three issues are presented: (1) The disallowance of officers' salaries for each of the years involved; (2) capitalization of certain expenditures by the Commissioner, which the taxpayer alleges should be deducted from gross income as operating expenses; and (3) rates of depreciation on buildings used by the taxpayer for business purposes.

### FINDINGS OF FACT.

The taxpayer is a Missouri corporation with its principal office at Moberly, where it is engaged in the business of buying and selling oil and gasoline. It operates oil stations at 21 points in Missouri. It was organized and incorporated in 1912 by C. E. Ripple and E. H. Gamble, who subscribed for equal amounts of the original authorized capital. Ripple was a director, secretary and general manager, and Gamble was a director, financial manager and president from the date of incorporation to and through the years involved in this appeal.

Each of the two incorporators subscribed for 160 shares of stock of the par value of $25 each and paid in therefor, in cash, the amount of $5,500. In 1916 the authorized capital was increased to $16,000 and the additional shares were issued in equal amounts to Ripple and Gamble as a stock dividend. In 1917 the authorized capital was increased to $32,000 and the additional shares were issued to Ripple

and Gamble as a stock dividend. In 1920 the authorized capital was increased to $125,000, of which $75,000 was common and $50,000 preferred. The common stock was issued in equal amounts to Ripple and Gamble as a stock dividend. Preferred stock in the amount of $10,000 was sold to the public.

Gamble lived in Knoxville, Iowa, about 75 miles from Moberly, where he was engaged in the farm-loan business. During the years involved in this appeal he was president and financial manager of the taxpayer. He visited Moberly and the other places where oil stations were maintained at least once each month, arranged with a bank in Knoxville for credit for the business in the amount of $20,000, and supervised the bank accounts and all the financial affairs of the taxpayer. During the years 1918, 1919, and 1920, he devoted at least one-half his time to such activities.

By agreement between himself and Ripple, Gamble received salary for the years in question in the following amounts: 1918, $900; 1919, $1,200; and in 1920, for the first six months, $600. For the second six months of 1920 his salary was fixed by the board of directors and on December 31, 1920, the board voted to him and he received during that year a bonus of $1,500, so that he drew from the taxpayer as compensation for his services during 1920 the total amount of $3,000.

Ripple lived in Moberly and devoted his entire time to the affairs of the taxpayer. By agreement with Gamble he was to receive actual living expenses for himself and family as full compensation for his services. Pursuant to such agreement he received the amounts of $1,423 during 1918 and $3,007 during 1919. His actual living expenses in 1918 amounted to $2,125.64 and in 1919 to $3,007. Under this same agreement he received $1,200 during the first six months of 1920. His salary for the second six months was fixed by the board of directors. On December 31, 1920, the directors voted to him and he received a bonus in addition to his salary for that year in the amount of $1,500, so that he drew from the taxpayer as compensation for his services for the year 1920 the total amount of $3,600.

By agreement between Ripple and Gamble, the only stockholders of the corporation, and by proper corporate action affecting the last six months of 1920, officers' salaries for the years in question were paid or accrued in the amounts of $3,025.64 for 1918; $4,207.85 for 1919; and $6,900 for 1920. During the same years the gross sales of the taxpayer amounted to $247,660.70 for 1918; $417,140.18 for 1919; and $563,680.59 for 1920.

The taxpayer's operations were profitable from the date of incorporation. In order to accumulate working capital adequate for the

needs of their growing business, the two stockholders drew out none of the earnings, except the amounts specified above as salaries, and the corporation never distributed any of its profits, except in the form of stock dividends, as hereinbefore described. As surplus accumulated from operations it was distributed as stock dividends and, in excess of requirements for such distributions, there were ample funds at all times for the payment of the salaries agreed to by and between the two stockholders.

During the years 1918, 1919, and 1920, the taxpayer expended the respective amounts of $2,200, $1,899, and $1,508, in repairing buildings and equipment, and charged such payments against income as ordinary and necessary expenses.

The taxpayer owns 21 buildings, located at various points in Missouri, which it uses as oil stations. Some of these structures were erected in 1912 and, during the years in question, were used only for storage purposes. These buildings are constructed of wood, with concrete block foundations and rubberoid roofs, and their useful life for business purposes is not more than 12½ years. Eight per cent per annum on a straight-line basis is a reasonable rate of depreciation for such structures.

Upon audit of the taxpayer's income and profits-tax returns for the years 1918, 1919, and 1920, the Commissioner disallowed all amounts deducted from gross income as salaries, except $1,200 in each of the years 1918 and 1919, and $1,500 in 1920; held that the amounts expended for repairs should be capitalized, and reduced the taxpayer's rate of depreciation on its buildings from 8 per cent to 4 per cent per annum.

### DECISION.

The deficiency determined by the Commissioner is disallowed.

---

## APPEAL OF JAMES S. MUIR.

Docket No. 3648.  Submitted October 27, 1925.  Decided November 25, 1925.

*Harold H. Seaton, Esq.*, for the taxpayer.
*L. C. Mitchell, Esq.*, for the Commissioner.

Before SMITH, LITTLETON, and TRUSSELL.

The taxpayer appeals from the determination of a deficiency in income tax for the year 1921 in the amount of $577.81.

### FINDINGS OF FACT.

During the year 1921 the taxpayer, a resident of New York City, was an employee of the Northwestern Leather Co. Under the terms